ETHEL S. FRENCH *v.* CLINTON E. FRENCH

MALTBIE, C. J., BROWN, JENNINGS, ELLS and CORNELL, JS.

Argued February 4—decided May 31, 1949

*Raymond E. Baldwin,* with whom was *Carl A. Mears,* for the appellant (defendant).

*Joseph M. Brandon* and *Thomas F. Keyes, Jr.,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellee (plaintiff).

MALTBIE, C. J. In this appeal by the defendant from a judgment granting the plaintiff a divorce and alimony, the former has made one of those sweeping attacks upon the finding which we have so often disapproved and which impose an unfair burden upon the court, its officers and opposing counsel. We have, however, made a few minor corrections and additions, and

we state the facts so far as necessary for a decision upon the main issues in the case.

The parties were married in 1927 in this state and they resided here thereafter. They have no children. The defendant was engaged in a boat and marine business at Devon. After the marriage, the parties lived in an apartment in the building where the business was located until 1935, when they moved to a dwelling house adjacent to it. The plaintiff, in addition to keeping house, assisted the defendant in the conduct of his business and in fact acted as office manager. In 1937 the defendant inherited a summer resort on Candlewood Lake in Danbury consisting of a pavilion, cottages, a bathing beach and docks, and in connection therewith boats were rented; and through a corporation, almost all of the stock of which he owned, he continued to operate and to develop the resort. Beginning in 1934, the defendant frequently criticized and reprimanded the plaintiff in the presence of employees and customers for mistakes made in the conduct of the business in Devon, whether the mistakes were hers or those of the employees; if the plaintiff attempted to leave, the defendant held her by force or blocked her way; and if she did escape to her home he would follow her there, leaving customers waiting, and continue his reprimands; he would seize and pinch her arms, causing black and blue marks, hold her against the wall and continue to abuse her by word of mouth. The treatment she received caused the plaintiff gastric distress and a serious nervous condition; this necessitated her consulting doctors; one of them warned the defendant that if his conduct towards the plaintiff continued she would become an invalid; but he did not desist.

In July, 1942, the defendant went to New York to work and continued to be away from Devon for approx-

imately eighteen months despite the plaintiff's desire that he find work in Bridgeport, only ten miles from Devon, so that he could be home and help carry on the business there. For the first two months he commuted daily to New York during the week and was at home weekends, but after that he ceased commuting and was in Devon only for a few weekends. He did not tell the plaintiff where he was living in New York or invite her there, and it was only later that she learned that, for a period of six months, he had not been employed there. During the time he was away she was left to conduct the business. While the defendant was in New York he met Marie Beattie Dolan, generally known as Mrs. Beattie, whom he had previously known. Two or three times a week she would visit him in the room he occupied, to do, as he claimed, secretarial work for him. Beginning in the spring of 1943, the defendant spent most of his weekends at the lake resort; at times Mrs. Beattie alone or with members of her family would be with him there; they would occupy one cabin; and though Devon was only fourteen miles away he would not go there. During the summer of 1944, Mrs. Beattie acted as manager of the resort, and thereafter, at the resort or elsewhere, the defendant continued to be with her on many occasions. The defendant knew that the plaintiff was aware of his association with Mrs. Beattie and that she was humiliated by and objected to it. She informed him that he must choose between herself and Mrs. Beattie.

The plaintiff brought an action against the defendant for a divorce on the ground of intolerable cruelty. After many conferences between the parties and their attorneys, the plaintiff in November, 1944, withdrew the action upon the promise of the defendant to comply with certain conditions, among them, that he would terminate his relations with Mrs. Beattie and would

spend his time at Devon and take care of his business there. The defendant had in fact no actual intent to fulfill these promises. After the withdrawal of the action the parties took a short trip to Vermont and then returned to Devon; but they did not thereafter cohabit as man and wife. Whereas the defendant had previously taken the plaintiff out to dinner occasionally, after this period he did it only once or twice. He spent almost all his time at the resort. On the rare occasions when he was at Devon he continued to criticize and humiliate the plaintiff. He continued his association with Mrs. Beattie, although he knew the effect this had upon the plaintiff; he wrote Mrs. Beattie affectionate letters and made her presents; and she in turn made gifts to him, including a ring which he was wearing at the trial. In 1945 the plaintiff ceased to help in the Devon business. In January, 1946, she visited the resort, and in a cabin in which Mrs. Beattie had stayed she found some women's apparel and some men's clothes belonging to the defendant, and in a brief case belonging to him some of the letters referred to above which he had written to Mrs. Beattie. Shortly thereafter the present action was begun.

Both the Devon and the resort properties were owned by corporations practically all the stock in which belonged to the defendant. The value of the former property was agreed to be $41,000 and the court found the net value of the resort property to be $120,000. These amounts were in addition to bank deposits and other assets of the defendant amounting to a considerable sum. The net income from the Devon property was more than $12,000 in 1941 and was in excess of that in 1946. In 1944 the gross revenue from the renting of cabins at the resort was $9100 exclusive of income from the operation of the pavilion and a lodge and restaurant there.

The mistreatment of the plaintiff by the defendant, his neglect of her and apparent preference for another woman, the attempt made at a reconciliation, with the promises he then made and his complete disregard of them, and the effect upon her physical health and the humiliation caused by his conduct afford, in their cumulative effect, a reasonable basis for the trial court's conclusion that the defendant had been guilty of intolerable cruelty, that is, of conduct which destroyed the public and personal objects of matrimony beyond rehabilitation, rendered the continuance of the marital relation unbearable and justified its termination. *Babcock* v. *Babcock,* 117 Conn. 310, 313, 167 A. 815; *Gowdy* v. *Gowdy,* 120 Conn. 508, 510, 181 A. 462; *Steinmann* v. *Steinmann,* 121 Conn. 498, 502, 186 A. 501; *Rice* v. *Rice,* 134 Conn. 658, 659, 59 A. 2d 799.

The court awarded the plaintiff $50,000 as alimony. This was less than one-third of the value of the Devon and resort properties. It is true both belonged to corporations, but the defendant owned almost all their stock; both were going concerns; and, while there was no finding of the market value of the stock, the court might well consider that it was not worth less than the value of tangible properties owned by the corporations. *Ray Consolidated Copper Co.* v. *United States,* 268 U. S. 373, 377, 45 S. Ct. 526, 69 L. Ed. 1006. The court also no doubt considered the fact that the plaintiff had evidently been instrumental in preserving the Devon business during the prolonged absences of the defendant. We cannot say that the trial court abused its discretion in fixing the amount of alimony. *LaBella* v. *LaBella,* 134 Conn. 312, 317, 57 A. 2d 627.

The defendant assigns error in a ruling of the trial court made in the course of the trial when the defendant sought permission to amend his answer to allege condonation. Counsel for the plaintiff did not object

to the filing of an amendment setting up that defense but only to the form of the allegations in one paragraph. The trial court stated that it had been its view in all cases that if parties agreed to an amendment offered in the course of the trial it was all right to allow it, but if there was objection it could do nothing about it; and it refused to allow the amendment in this case. Whether an amendment so offered should be allowed rests in the discretion of the court; *Fine* v. *Moomjian,* 114 Conn. 226, 230, 158 A. 241; and, if justice to the party offering it requires its allowance, the fact that his adversary objects is an insufficient reason to refuse permission to amend. The case was, however, exhaustively tried, and all the relations between the parties developed at great length. In offering the amendment, defendant's counsel stated that it would not change the evidence in any way. Had the reconciliation of the parties at the time the first divorce action was withdrawn continued in effect, there would have been ground for a claim of condonation. But the failure of the defendant to keep the promises he then made and his continued mistreatment and neglect of the plaintiff could not but destroy the effect of that reconciliation as a bar to the divorce. *Bagdan* v. *Bagdan,* 100 Conn. 521, 523, 123 A. 841; *Torlonia* v. *Torlonia,* 108 Conn. 292, 303, 142 A. 843. The defendant could not have prevailed had he been permitted to plead condonation; and the error of the trial court cannot be regarded as harmful.

The defendant also claims error in the ruling of the trial court fining the defendant for contempt of court on the ground that he had failed to give direct answers to questions asked of him on cross-examination but instead had attempted to state circumstances explaining or mitigating the effect of the matters as to which he was asked. We may examine the testimony

brought before us by the defendant to secure corrections of the finding, if it is necessary to do so to avoid a conclusion of error in a ruling. *State* v. *Bradley,* 134 Conn. 102, 117, 55 A. 2d 114; Conn. App. Proc., p. 102. The testimony shows that the defendant had, after many warnings by the court, persisted in the course of conduct stated by the court. We are not called upon, however, to determine whether the action of the trial court in fining him was justified, because, during the same session of court, it remitted the penalty upon the promise of the defendant that he would thereafter do his best to answer questions asked and say no more.

The court's denial to defendant's counsel of any opportunity to argue the case orally was also assigned as error. The trial occupied several days and ran into the summer months. It does not appear that the defendant was precluded from offering all the evidence he desired to submit; at the close of the trial he was allowed to file a rather lengthy brief on the law and the facts; and the record does not show that he ever requested an opportunity to argue orally. While the court had stated that the evidence must be concluded on July 9 and, later, that nothing would be heard in connection with the case after 2 p. m. on that day, we cannot say that, had defendant's counsel claimed a right to argue the case, the trial court would not have given him an opportunity at a later time.

It only remains to consider certain rulings on evidence assigned as error. As to some of them, the defendant seeks to have us add certain facts to the preliminary statements in the finding or to amplify the quotations from the evidence, but no corrections we could make would materially affect the result. We have, however, considered the rulings in the light of evidence which appears in the record, although not in the finding, as we have stated above we may do. The

court refused to admit in evidence the file of the first divorce action brought by the plaintiff; as indicated in its final statement in regard to the matter, it could take judicial notice of that file; *State ex rel. Campo* v. *Osborn,* 126 Conn. 214, 217, 10 A. 2d 687; and it in fact found that such an action had been brought on the ground of intolerable cruelty and later withdrawn, thus giving the defendant the benefit of all he could have claimed had the file been admitted in evidence. Error is claimed in the admission of a letter from the defendant to Mrs. Beattie on the ground that it had never come to the attention of the plaintiff; the plaintiff testified to the finding of a number of letters in the defendant's brief case when, before the bringing of this action, she visited the resort, and each was marked for identification and later admitted in evidence; while no direct question was asked as to the finding of this particular letter in the brief case, the court could reasonably conclude from the course of the examination of the witness that it was one of those so found. A question of a witness produced by the defendant asking whether he ever saw the defendant show any affection for Mrs. Beattie was not improper as regards its subject matter; *Atwood* v. *Atwood,* 84 Conn. 169, 172, 79 A. 59; *State* v. *Jones,* 124 Conn. 664, 667, 2 A. 2d 374; but the witness testified that he had seen them together only when he had visited the office at the resort on business; and, in view of the other testimony in the case, the exclusion of the question could not have affected the result. A question asked by the plaintiff's counsel of the defendant as to whether he intended to produce Mrs. Beattie as a witness was not improper in view of the finding of the court that plaintiff's counsel had been endeavoring to have a subpoena served upon her. During the cross-examination of the defendant as to his failure to call as witnesses certain doctors who

had treated the plaintiff, and in that connection as to a conversation between defendant's counsel and one of them, the court interpolated a question as to what counsel had said to the doctor; the question merely served to clear up a situation on which the defendant had been examined at some length without objection. The only other ruling assigned as error to which an exception was taken and which is pressed in the brief does not require comment.

There is no error.

In this opinion the other judges concurred.