## ARLENE BAKER *v.* DONALD BAKER

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE No. FA82012383S
ANSONIA-MILFORD AT MILFORD

Memorandum filed October 26, 1983

*Daniel V. Presnick,* for the plaintiff.
*James H. Aspinwall,* for the defendant.

KULAWIZ, J. The first issue before the court is whether recognition should be given to a Mexican divorce decree where the standards of jurisdiction prerequisite to the attainment of a Connecticut divorce decree were absent, but where the subsequent conduct of the parties indicated their acceptance of the Mexican decree as valid.

The second issue before the court is whether under General Statutes § 46b-1 (15)[1] a Connecticut court has jurisdiction over matters affecting and involving a New York separation agreement which was incorporated into a Mexican divorce decree.

[1] General Statutes § 46b-1 provides, in pertinent part: "Matters within the jurisdiction of the superior court deemed to be family relations mat-

The plaintiff, Arlene Baker, and the defendant, Donald Baker intermarried in the state of New York on April 24, 1954. On January 22, 1970, while residents of the state of New York, Arlene and Donald entered into a separation agreement. On February 2, 1970, the First Court of the District of Bravos, State of Chihuahua, Republic of Mexico, in a civil suit started by Arlene Baker, granted her a divorce from Donald Baker. Arlene Baker personally appeared in court, and Donald Baker appeared by an attorney and answered the petition for divorce. Arlene Baker subsequently married and then divorced one Charles Bergo. Donald Baker subsequently remarried and remains remarried. He has a three year old child born of his second marriage. At the time of the remarriage of both Arlene and Donald Baker, all four parties to the two marriages were residents of the state of New York. Arlene Baker is still a resident of the state of New York and Donald Baker is a resident of the state of Connecticut. There are no minor children of the original 1954 marriage between Arlene and Donald Baker.

The plaintiff Arlene Baker asks this court to hold that since the standards of jurisdiction prerequisite to the issuance of a Connecticut matrimonial judgment were absent, the Mexican court was without jurisdiction to enter the divorce decree; therefore the parties are still lawfully married, and this court has jurisdiction to entertain the plaintiff's present dissolution action. For reasons stated below, this court cannot make such a finding.

The defendant in his cross complaint alleges that the plaintiff has violated the terms of their separation agreement which he states were incorporated into the Mexican divorce decree. The defendant wishes to pur-

ters shall be matters affecting or involving . . . (15) actions related to prenuptial and separation agreements and to matrimonial decrees of a foreign jurisdiction."

sue equitable relief for said violation, and asks this court to hold that under General Statutes § 46b-1 (15), it has jurisdiction over the cross complaint. For reasons stated below this court holds that it does not have, by virtue of § 46b-1 (15), jurisdiction over the defendant's cross complaint.

The principle of comity provides the basis upon which state courts give validity to divorce judgments of foreign countries. Comity permits recognition of judgments of foreign countries pursuant to international duty and convenience, with due regard for the rights of American citizens.

American courts agree that divorce decrees of foreign countries should be given full force and effect, provided that the country had proper jurisdiction over the matter. American courts disagree, however, over which tests of jurisdiction should be applied to the foreign divorce decree. A majority of courts maintain that the jurisdictional standards of the court in which recognition of the foreign decree is sought should be applied to the original divorce decree. If the standards were not met, then the state court need not recognize the validity of the foreign decree. *Warrender* v. *Warrender,* 79 N.J. Super. 114, 190 A.2d 684 (1963), aff'd, 42 N.J. 287, 200 A.2d 123 (1964); see *Sohnlein* v. *Winchell,* 230 Cal. App. 2d 508, 41 Cal. Rptr. 145 (1964); *Bohaker* v. *Koudelka,* 333 Mass. 139, 128 N.E.2d 769 (1955); *Weber* v. *Weber,* 200 Neb. 659, 265 N.W.2d 436 (1978).

The New York courts entertain an alternative view. Under New York law, if the jurisdictional requirements of the foreign country were satisfied at the time of the divorce decree, then New York courts will recognize the validity of the foreign decree. *Rosenstiel* v. *Rosenstiel,* 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965), cert. denied, 384 U.S. 971, 86 S. Ct. 1861, 16 L. Ed. 2d 682 (1966).

*Warrender* v. *Warrender,* supra, is illustrative of the majority view that the state courts will not recognize the validity of a foreign divorce decree if the standards of jurisdiction prerequisite to the attainment of a state divorce decree were not satisfied at the time of the foreign decree. *Warrender* involved a Mexican bilateral divorce. The wife had visited Mexico for approximately one day. During that time she appeared before a Mexican court and was divorced from her husband who was represented by counsel. The Mexican decree recited that both parties submitted to the jurisdiction of the court by their attorneys, but the decree did not declare that the residence or domicile of either party was the Mexican state. The New Jersey court, noting that the true domicile of both parties at the time of the foreign decree was New Jersey, held, inter alia, that the Mexican divorce was absolutely void on its face and did not legally terminate the marriage. The implication of the court's ruling was that the parties had not satisfied the New Jersey standards of jurisdiction as to domicile prerequisite to the attainment of a divorce. In other words, they had not established in Mexico what constituted, under New Jersey law, domicile. If the parties had established such "New Jersey domicile" the court would have recognized the Mexican divorce decree as valid.

*Rosenstiel* v. *Rosenstiel,* supra, illustrates the countervailing New York view. In *Rosenstiel* a husband had obtained a bilateral divorce decree from a Mexican court. During that proceeding the husband appeared before the court in person and the wife was represented by counsel. Although neither party had established what, under New York law, would constitute residency, the husband had, by some written formalities, established residency sufficient to enable the Mexican court to attain jurisdiction. Two years after the divorce, the wife's second husband brought an action to have her

Mexican divorce from her former husband declared invalid. The second husband's ultimate goal was to get his marriage to the wife annulled.

The court opted to recognize the validity of the Mexican divorce decree, and in so doing, reaffirmed the New York view that, with respect to domicile, the jurisdictional requirements of the foreign country issuing the divorce decree are controlling when domestic recognition of such a decree is in issue. In discussing the question of jurisdiction the court (p. 72) said:

"Since he [the former husband] was one party to the two-party contract of marriage he carried with him legal incidents of the marriage itself, considered as an entity, which came before the court when he personally appeared and presented his petition. . . . The voluntary appearance of the other spouse in the foreign court by attorney would tend to give further support to an acquired jurisdiction there over the marriage as a legal entity. In theory jurisdiction is an imposition of sovereign power over the person. It is usually exerted by symbolic and rarely by actual force, e.g., the summons as a symbol of force; the attachment and the civil arrest, as exerting actual force. But almost universally jurisdiction is acquired by physical and personal submission to judicial authority and in legal theory there seems to be ground to admit that the Mexican court at Juarez acquired jurisdiction over the former marriage of the defendant."

Although the court decided *Rosenstiel* under the New York view of jurisdictional requirements with respect to domicile, it seems evident that the equities of the case also mandated the court's ultimate decision. The second husband initially had accepted the validity of the foreign decree, and had sought to have it declared invalid only when he wished a basis for the annulment of his own marriage.

If *Rosenstiel* is interpreted in this light, most state courts would agree with the outcome. For although the majority of states refuse to recognize the validity of a foreign divorce decree when their own jurisdictional requirements with respect to domicile are absent, most courts, when equities mandate, will give practical recognition to the foreign decree. Consequently, the party attacking the foreign decree may be effectively barred from securing judgment of its invalidity. Thus, in *Chilcott* v. *Chilcott,* 257 Cal. App. 2d. 868, 65 Cal. Rptr. 263 (1968), the court held that even if a wife's Mexican divorce were invalid, her husband would be estopped to deny its validity where both parties had remarried in the belief that they were divorced. Similar reasoning affected the court's outcome in *Oakley* v. *Oakley,* 30 Colo. App. 292, 493 P.2d 381 (1971). There the court held that a defendant husband in a divorce action regarding his second marriage should not have been permitted to impeach and deny the validity of his Mexican divorce decree concerning his prior marriage, for the purpose of invalidating his second marriage contract. A New Jersey court, notwithstanding *Warrender* v. *Warrender,* supra, used the same reasoning in *Weinberg* v. *Todd Shipyards,* 97 N.J. Super. 289, 235 A.2d 42 (1967), to hold that in a claim for workers' compensation death benefits, the deceased's first wife would be estopped from attacking the validity of a Mexican divorce which she obtained and on the basis of which she remarried.

The leading case in Connecticut involving domestic recognition of the validity of a foreign divorce decree is *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 295 A.2d 519 (1972). In that case a wife had brought an action for past and future support against her absent husband. The defendant husband appealed the trial court's holding that a Mexican court was without jurisdiction to enter a decree of divorce, affecting the status of the

marriage, and that the divorce so obtained was unlawful. The Connecticut Supreme Court in *Litvaitis* upheld the lower court's decision, and stated (p. 546): "Regardless of its validity in the nation awarding it, the courts of this country will not generally recognize a judgment of divorce rendered by the courts of a foreign nation as valid to terminate the existence of a marriage unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good faith domiciliary in the foreign nation at the time the decree was rendered."

Although the *Litvaitis* decision seems to mandate a holding that the Mexican divorce decree of the case at bar is invalid, a thorough examination of *Litvaitis* makes such a mandate questionable. In that case the trial court concluded that the husband had voluntarily abandoned his wife because he wanted to be free and could not accept responsibility. The trial court noted also that the Mexican divorce proceeding had been ex parte: the wife had never submitted herself to the jurisdiction of the Mexican court. The court even went so far as to find that the husband was arguing for the validity of the Mexican decree so as to alleviate himself of any responsibility to furnish his wife support. *Litvaitis* v. *Litvaitis,* supra, 546–47.

The Supreme Court's decision, while ostensibly predicated on an assertion that domestic jurisdictional requirements concerning domicile must be met, was obviously affected by the aforementioned facts and equities. The abandoned wife was in need of support, and the husband was attempting to escape his legal responsibility to provide such support.

The case at bar involves a situation much different from that of *Litvaitis*. The plaintiff was not abandoned by her husband and then divorced by him in an ex parte proceeding in Mexico. The plaintiff journeyed to Mex-

ico to obtain a divorce from her husband who was represented by counsel. She realized the divorce would sever her legal ties with her defendant husband, and wanted such ties severed so that she could remarry. Only when the second marriage proved unsuccessful did the plaintiff assert the invalidity of the Mexican divorce decree. Unlike the abandoned wife in *Litvaitis,* who was a victim of the legal technicalities of a Mexican divorce decree, the plaintiff in the present action utilized such technicalities to her benefit, and now seeks to invalidate her use of such technicalities for yet another benefit. The defendant husband in the case at bar did not abandon the plaintiff, and seeks nothing more than to be left alone.

With consideration being given to the aforementioned facts and equities of the case at bar, this court holds that recognition should be given to the validity of the Mexican divorce decree of February 2, 1970, concerning the plaintiff Arlene Baker and the defendant Donald Baker. Thus, this court is without jurisdiction to hear the plaintiff's dissolution action concerning her marriage to the defendant on April 24, 1954.

A thorough reading of *Litvaitis* indicates that today's holding is not at odds with Connecticut law. For as the *Litvaitis* court stated (p. 546), a court will not "generally" recognize the validity of a foreign divorce decree if domestic jurisdictional requirements as to domicile are not met. It is the opinion of this court that the equities and facts of the case at bar mandate an exception to the "general" rule of *Litvaitis* and a practical recognition of the validity of the Mexican divorce decree.

The final issue this court must decide is whether it has jurisdiction to hear the matter raised in the defendant's cross complaint. The defendant alleges that the plaintiff has violated their separation agreement of Jan-

uary 22, 1970, by instituting this action. He asks the court to enjoin the plaintiff from further harassing him. The defendant alleges that General Statutes § 46b-1 (15) gives this court jurisdiction to hear matters affecting and involving the New York separation agreement which was incorporated into the Mexican divorce decree of February 2, 1970.

The defendant's assertion that this court has jurisdiction seems to be predicated on his belief that "matrimonial decrees of a foreign jurisdiction" as used in § 46b-1 (15) means matrimonial decrees of foreign nations. The key word in the phrase is "foreign." There exists no case law nor statutory language concerning its exact meaning. General Statutes § 46b-70 does define "foreign matrimonial judgment," however, as "any judgment, decree or order of a court of any state in the United States." *Morabito* v. *Wachsman,* 191 Conn. 92, 101, 463 A.2d 593 (1983).

In the absence of any countervailing evidence that "foreign" jurisdiction means the jurisdiction of a foreign nation, this court holds that the defendant cannot base his assertion of jurisdiction on § 46b-1 (15). Consequently, this court is without jurisdiction to hear the defendant's cross complaint.

Fully cognizant of the fact that Connecticut courts have not been called upon to decide in this manner in the past, this court, because of the equities involved, dismisses this action for lack of jurisdiction.