MARGOT A. BRUNEAU *v.* ROBERT J. BRUNEAU
(3351)

BORDEN, SPALLONE and DALY, Js.

Argued December 14, 1984—decision released April 2, 1985

*Edward J. Cooke, Jr.,* for the appellant (plaintiff).

*C. Ian McLachlan,* with whom was *William T. Fitzmaurice,* for the appellee (defendant).

SPALLONE, J. The parties were married in 1942. In 1965, the defendant petitioned for a divorce in the First Civil Court of the District of Bravos, Ciudad Juarez, State of Chihuahua, Republic of Mexico. The defendant appeared personally in the Mexican court. The plaintiff appeared by counsel and consented to jurisdiction. A divorce decree was rendered in the Mexican court on October 28, 1965. The decree incorporated a separation agreement executed by the parties on July 1, 1965, which provided for the custody and support of their minor child, support and maintenance of the plaintiff, and the division of the marital property.

On January 27, 1984, the plaintiff brought this action to dissolve her marriage to the defendant. The defendant moved to dismiss on the ground that the trial court lacked jurisdiction because the parties were already divorced by the Mexican decree. In this appeal by the plaintiff from the granting of that motion, the central issue is whether the action of the trial court was correct in light of the Mexican divorce decree.[1]

---

[1] The plaintiff has also raised three additional issues in which she claims that the trial court erred in dismissing the action without permitting her to present evidence as to the equities of the case or the domicile of the parties at the time of the Mexican dissolution decree. Having examined these issues, we decline to consider them because no legal arguments were formulated thereunder. *McGaffin v. Roberts,* 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984). We note, however, that the transcript indicates that the plaintiff's attorney never expressed an interest in presenting evidence at the hearing and, in fact, stated that the question before the court was "purely a legal question." When the court stated that it would "probably, *but not necessarily*" (emphasis added) request an evidentiary hearing, the plaintiff took no exception to this limitation of her opportunity to present evidence. Thus, even if these issues were properly briefed, nothing in the record of this case warrants our departure from the rule that precludes us from considering a claim unless it was distinctly raised at trial or arose subse-

Judgments rendered by courts in foreign countries are recognized in the United States under the principle of comity. When so recognized, a decree of divorce granted in a foreign country will be given full force and effect not only as to the determination of the parties' status, but also with respect to alimony and child support. *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 544–45, 295 A.2d 519 (1972). An important exception to the principle of comity is where the foreign court lacked jurisdiction. The courts of this country will not generally recognize a judgment of divorce granted by a court of another country "unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good faith domiciliary in the foreign nation at the time the decree was rendered." Id., 546.

The plaintiff argues under the rule set forth in *Litvaitis* v. *Litvaitis,* supra, that because neither she nor the defendant was domiciled in Mexico at the time the decree was rendered, the trial court erred in recognizing the foreign judgment of divorce. The defendant contends that a more liberal position should be adopted as to bilateral[2] Mexican decrees as long as Mexican jurisdictional standards have been met. He also argues that the equities of this case dictate that the Mexican decree be afforded recognition.

In *Litvaitis* v. *Litvaitis,* supra, the marriage between the parties was dissolved in Mexico upon a petition filed by the defendant husband. He remarried after obtain-

quent to the trial. Practice Book § 3063; *Chaplin* v. *Balkus,* 189 Conn. 445, 447, 456 A.2d 286 (1983); cf. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); see *French* v. *French,* 135 Conn. 542, 549, 66 A.2d 714 (1949).

[2] "Bilateral divorces are based on the physical presence of both spouses in the divorcing nation, or physical presence of the petitioner and the voluntary 'appearance' by the defendant through an attorney. . . . An ex parte divorce is based on the petitioner's physical presence in the foreign nation, with notice or constructive service given to the absent defendant." (Citations omitted.) Swisher, "Foreign Migratory Divorces: A Reappraisal," 21 J. Fam. L. 9, 25 n.71-72 (1982).

ing the divorce and thereafter ceased making support payments to the plaintiff. In an action by the plaintiff for past support and for an order requiring the payment of future support, the trial court found that the Mexican divorce was invalid. In affirming the trial court's decision, the Supreme Court noted that neither party had a domicile in Mexico and that the plaintiff never submitted herself to the jurisdiction of the Mexican court. Id., 546. While the Supreme Court did not rule on the basis of the equities of the case, the equities were squarely before it when it found that the trial court's conclusion "that the defendant voluntarily abandoned the plaintiff because he wanted to be free and could not accept responsibility" was amply supported by the evidence. Id., 547.

The defendant distinguishes *Litvaitis* from this case because the Mexican divorce in *Litvaitis* was obtained ex parte. He urges reliance on the reasoning of *Baker* v. *Baker,* 39 Conn. Sup. 66, 468 A.2d 944 (1983). In *Baker,* the plaintiff petitioned for and obtained a dissolution decree in a Mexican proceeding in which she appeared personally and the defendant appeared by counsel. After the Mexican judgment was rendered, both the plaintiff and the defendant married other individuals. When the plaintiff's second marriage proved unsuccessful, she brought a dissolution action in Connecticut. The Superior Court, after acknowledging the general rule barring the recognition of divorce decrees rendered in a foreign country unless the jurisdictional requirements of the recognizing state are satisfied, held that *practical* recognition should be given the Mexican decree because the equities and facts of the case mandated an exception to the general rule. *Baker* v. *Baker,* supra, 73.

The concept of "practical" recognition of a divorce decree rendered in a foreign nation where neither spouse is domiciled has been recognized by a number

of courts. See, e.g., *Mayer* v. *Mayer,* 66 N.C. App. 522, 311 S.E.2d 659 (1984); see also annot., 13 A.L.R.3d 1419, § 8 (a) and cases cited therein. "[P]ractical recognition may be accorded such decrees by estoppel, laches, unclean hands, or similar equitable doctrine under which the party attacking the decree may be effectively barred from securing a judgment of invalidity." Annot., 13 A.L.R.3d 1419, 1452. Thus, a party may be precluded from attacking a foreign divorce decree if such an attack would be inequitable under the circumstances. *Scherer* v. *Scherer,* 405 N.E.2d 40, 44 (Ind. App. 1980). Moreover, in a case involving a Mexican divorce, our Supreme Court has recently recognized that "out-of-state divorces are [now] both less likely and less opprobrious," and that, therefore, such divorces should not lightly be overturned where "the parties had intended to channel the dissolution of their marriage in a legitimate rather than in an illegitimate fashion." *Hayes* v. *Beresford,* 184 Conn. 555, 567, 440 A.2d 224 (1981); see also *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 488 A.2d 1290 (1985).

The rule precluding a person from attacking the validity of a foreign divorce if, under the circumstances, it would be inequitable to do so "is not limited to situations of what might be termed 'true estoppel' where one party induces another to rely to his damage upon certain representations as to the facts of the case." 1 Restatement (Second), Conflict of Laws § 74, comment b. "[I]f the person attacking the divorce is, in doing so, taking a position inconsistent with his past conduct, or if the parties to the action have relied upon the divorce, and if, in addition, holding the divorce invalid will unset relationships or expectations formed in reliance upon the divorce, then estoppel will preclude calling the divorce in question." Clark, "Estoppel Against Jurisdictional Attack on Decrees of Divorce," 70 Yale L.J. 45, 57 (1960). Thus, if one party has accepted bene-

fits under the original decree or waited an unreasonably long time before attacking it, an invalid decree will be held immune from attack, particularly if the other party has remarried in the meantime. 1 Restatement (Second), Conflict of Laws § 74, comment b. Consequently, even if a divorce decree rendered in a foreign country is jurisdictionally invalid under the general rule set forth in *Litvaitis,* the judgment may be permitted practical recognition. *Baker* v. *Baker,* supra. We find that this is such a case.

As we have noted, the defendant obtained the Mexican decree on October 28, 1965. The defendant remarried in reliance on that decree. The plaintiff did not. Nineteen years after the Mexican judgment was rendered, the plaintiff brought this action because of the defendant's alleged failure to observe various financial obligations imposed by the agreement which was incorporated into the decree. The plaintiff contends that she is dependent upon the benefits she was granted pursuant to the decree and that she chose to appear by counsel in Mexico upon the expectation that she would be awarded such benefits.

While we acknowledge the possibility of the plaintiff's genuine need, we nevertheless conclude that her acceptance of benefits for nineteen years under the decree which she participated in obtaining estops her from now attacking the validity of that decree. 1 Restatement (Second), Conflict of Laws § 74. Under the circumstances, to permit the plaintiff to challenge the validity of the decree would amount to allowing her to take advantage of a fraud in which she participated by being one of the parties to the Mexican proceeding.[3]

---

[3] The plaintiff, in her statement of issues on appeal, virtually concedes such participation: "4. May the parties to an internationally foreign divorce case *fabricate* jurisdiction by agreement, where neither party is a domiciliary of a foreign country and both parties are domiciled in Connecticut?" (Emphasis added.)

See *Webb* v. *Webb,* 461 S.W.2d 204, 206 (Tex. Civ. App. 1970); see also *Smith* v. *United States,* 277 F. Sup. 583, 589-90 (M.D. Fla. 1967). We note that the result we have reached does not leave the plaintiff without recourse since she may sue to enforce the separation agreement. *Hayes* v. *Beresford,* supra, 566.

Having examined the equities of this case, we hold that the trial court was correct in according the Mexican decree practical recognition under the principles discussed above.

There is no error.

In this opinion the other judges concurred.