[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR RELEASE OF LIS PENDENS (#106)
Before the court is the defendant's motion to release and discharge lis pendens filed by the plaintiff with respect to approximately twenty-four separate parcels of real estate owned by the defendant in this state. The underlying action is the plaintiff's complaint for dissolution of her October 6, 1953 marriage to the defendant.
1. The lis pendens are filed pursuant to the provisions of Sec. 46b-80 of the Conn. General Statutes. That statute incorporates by reference Sec. 52-325a and 325b which set forth the procedure to be followed by an adverse party who seeks discharge of the liens. At the prescribed hearing it becomes the burden of the lienor "to establish that there is probable cause to sustain the validity of his claim." Sec. 52-325b(a). "[The] hearing is not intended to be a trial on the merits, nor does it require the plaintiffs to establish their claims by a preponderance of the evidence." Williams v. Bartlett, 189 Conn. 471, 483 (1983). It is only incumbent on the court to reach conclusions which are probably correct on the basis of facts which it finds are probably true. Zak v. Weisman, 18 Conn. App. 16, 19-20
(1989); see also Solomon v. Aberman, 196 Conn. 359, 363
(1985).
2. The parties intermarried on October 6, 1953, and are the parents of two children, issue of the marriage who attained their adulthood long prior to the start of these proceedings.
In 1964 the parties entered into a formal separation agreement which was prepared by Sanford Glassman, a Connecticut attorney, who was also requested to make arrangement for a Mexican decree of dissolution which would CT Page 9987 incorporate the terms of the agreement.
The evidence is unclear whether Attorney Glassman was representing the plaintiff, the defendant, or both. However, he made the necessary arrangements, and, on August 3, 1966, the plaintiff personally appeared at the First Civil Court of the District of Bravos, State of Chihuahua, Republic of Mexico, and, represented by Mexican counsel, obtained a decree of dissolution which incorporated the terms of their agreement. The defendant, who did not physically appear, submitted to jurisdiction of the Mexican court through counsel who appeared in his behalf.
It is undisputed that since 1966 the defendant has fully complied with all of the terms of the Mexican decree. His compliance with respect to both the plaintiff and their children has in fact exceeded the requirements of the Mexican judgment.
Over the years which followed the Mexican decree until 1982 the parties maintained a cordial relationship. For periods of time they lived together, traveled together, spent holidays in each other's company, and enjoyed a sexual relationship as well. The plaintiff, during much of the time, lived in a private residence owned by the defendant in Florida, and in that state she supervised, managed, and maintained other properties which the defendant had acquired over the years. Both parties admit to having social and sexual relations with other persons of the opposite sex.
In 1982 the plaintiff instituted an action in this court to dissolve her marriage to the defendant. Mr. Sherman claims to have been completely shocked by the plaintiff's action, believing that the parties were already divorced pursuant to the Mexican decree. It is coincidental that the action was brought about the time the defendant commenced what has become a long and close personal relationship with another woman. In any event, at the urging of the defendant, Mrs. Sherman's 1982 dissolution action was withdrawn, and she did not press it further.
In 1992 the plaintiff instituted the instant action and in connection therewith filed the several lis pendens which are the subject of the defendant's motion. CT Page 9988
In the ten years which spanned the prior and current Connecticut actions the parties' relationship with each other changed to some degree. Among other things, Mr. Sherman's relationship with the third party female became more serious, although marriage, he concedes, is not contemplated at this time. In the latter connection the defendant has notified the plaintiff of his wish to use the Florida residence and of his added wish that Mrs. Sherman take up residence in a condominium apartment. This request admittedly did not set well with the plaintiff.
The defendant argues that during the ten year interval since 1982 the underlying facts and the plaintiff's awareness of them have not changed. She is, therefore, guilty of laches which, the defendants argues, bars the probable cause she is required to show in connection with the instant motion. The court rejects the argument. Under all of the circumstances it cannot be said that the plaintiff's delay was inexcusable, but even if it was, the court does not find that the defendant was prejudiced thereby. Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 684-85 (1955).
3. The key issue before this court concerns the validity of the parties' 1966 Mexican divorce. If it is not valid or otherwise legally recognizable, then the court is persuaded that the question of probable cause as it relates to the instant motion should be resolved in the plaintiff's favor.
The law is clear that "[c]ourts of the United States are not required by federal law to give full force and effect to a judgment granted in a foreign nation. (Cases cited). On the other hand, judgments of courts of foreign countries are recognized in the United States because of comity due to the courts and judgments of one nation from another." Litvaitis v. Litvaitis, 162 Conn. 540, 544
(1972). Even on the basis of comity, however, a foreign divorce will not be recognized where, among other reasons, the foreign court lacked jurisdiction. Id. 545.
It is uniformly true that, when collaterally attacked, our courts will not recognize a foreign divorce unless at least one of the spouses had a domicil in the foreign state. Domicil is an essential ingredient of CT Page 9989 jurisdiction under the law of the state, even though it may not be required by the law of the foreign state. Id.
Clearly, neither party was a good faith domiciliary of Mexico, and the divorce granted to them by the court of that country is jurisdictionally deficient.
Notwithstanding its deficiency, however, the defendant argues that the decree should be held valid in that the equities and facts of the case mandate an exception. It is his position that the plaintiff, who sought and obtained the Mexican divorce, has subsequently benefited therefrom (i.e., by virtue of the defendant's full compliance with terms of the decree) and has by her conduct at least implicitly recognized its validity.
The defendant relies heavily in support of his claim on the concept of practical recognition of a divorce decree as enunciated in Baker v. Baker, 39 Conn. Sup. 66
(1983), and Bruneau v. Bruneau, 3 Conn. App. 453 (1985). As the Bruneau court said:
 "The concept of `practical recognition' of a divorce decree rendered in a foreign nation where neither spouse is domiciled has been recognized by a number of courts. See e.g., Mayer v. Mayer, 66 N.C. App. 522, 311 S.E.2d 659 (1984); see also annot. 13 A.L.R.3d 1419, Sec. 8(a) and cases cited therein. `[P]ractical recognition may be accorded such decrees by estoppel, laches, unclean hands or similar equitable doctrine under which the party attacking the decree may be effectively barred from securing a judgment of invalidity' Annot. 13 A.L.R.3d 1419, 1452. Thus, a party may be precluded from attacking a foreign divorce decree if such attack would be inequitable under the circumstances." p. 456-57.
The defendant argues that the plaintiff should be estopped from denying her divorced status in that her conduct over the years in accepting benefits from the defendant CT Page 9990 and comporting herself as a single woman militate against her present posture. The defendant points out that Both parties have for many years filed single taxpayer income tax returns and have engaged in sexual relations with others, such as would brand each criminally guilty of adultery were their relationship to be considered that of husband and wife.
While there is some merit to the defendant's claims, the court does not find that the factual history invests the Mexican decree with the practical recognition which the defendant argues it should have. It is noteworthy that the parties, unlike those in Baker and Bruneau, never remarried. In fact, during a large percentage of the period since 1966 they have, as hereinbefore described, maintained a close personal and social relationship, not unlike that of a married couple. The financial burden imposed upon the defendant by the Mexican decree was not onerous, and that he has seen fit to comply with the order and contribute to the support of Mrs. Sherman and their children should not, in the view of the court, entitle the defendant to special credit.
Mrs. Sherman's institution of the 1982 dissolution action surely evidenced her non-reliance on the Mexican divorce. Moreover, the defendant's entreaties that she drop the action were based, not on an already existent divorce status, but rather on the effect that such action was having, or would have, on his (and their) economic stability and financial image.
4. For the reasons above stated, the court finds that the plaintiff has sustained her burden of establishing probable cause, and the defendant's motion is accordingly denied.
5. Apart from the main thrust of his argument (i.e., that the plaintiff has failed to establish the requisite probable cause), the defendant argues that the lis pendens procedure of Sec. 46b-80 is constitutionally defective in that the post-filing hearing is insufficient to meet applicable due process standards as enunciated by the United States Supreme Court. Connecticut v. Doehr, 115 L.Ed.2d 1
(1991). In this regard appellate courts have stressed that "the challenge of a statute on constitutional grounds always CT Page 9991 imposes a difficult burden on the challenger. [They] have consistently held that every statute is presumed to be constitutional and have required invalidity to be established beyond a reasonable doubt." Peck v. Jacquemin, 196 Conn. 53,64 (1985. In short, "[l]egislative enactments carry with them a strong presumption of constitutionality", and the burden lies heavily on one who seeks to prove otherwise. Zapata v. Burns, 207 Conn. 496, 508 (1988).
This court chooses not to consider the constitutional issue raised. Such issues should not be considered unless absolutely necessary to the decision of a case or unless public interest warrants such consideration. State v. DellaCamera, 166 Conn. 557, 560-61 (1974). The matter is more properly a subject for appellate review, should the defendant choose to pursue it.
Gaffney, J.