[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
This is a Motion to Dismiss filed on November 28, 2000 by the Defendant husband in response to a Dissolution of Marriage action filed by the plaintiff-wife on November 14, 2000. The husband asserts in his motion that the court lacks jurisdiction to hear the dissolution action because the parties were previously divorced. The wife claims that the previous divorce was procured by fraud and deception and therefore is void as a matter of law. This is a case of first impression in Connecticut.
Over a one day period, the court heard testimony from numerous witnesses including the parties, a relative, friends of the husband and the couple's daughter. Numerous exhibits were entered as well which included a financial aid application (Pl. Ex. #1), a letter from the husband dated December 10, 1989 (Pl. Ex. #3), the parties' marriage certificate certified on August 22, 1989 (Pl. Ex. #4), a letter from Jewish Family Services (Pl. Ex. #2), and the wife's naturalization certificate dated January 5, 1996 (Pl. Ex. #5). After presenting evidence, the parties waived oral argument and requested permission to submit briefs in support of their claims. The court considered the testimony, documentary evidence and arguments briefed by the parties, in making its findings and rendering a decision.
 FINDINGS
The parties were married on February 15, 1975 in Kiev, Ukraine. The husband was able to get employment in Kiev based on the wife's Kiev residence with her parents. After their marriage, the wife and husband resided in the wife's parents' apartment with four relatives of the wife's. One daughter was born to the husband and wife on November 30, 1975. CT Page 1427
In 1983, the husband raised the subject of divorce with the entire family. He raised this issue as the best means of procuring a separate apartment for his family. There is no dispute that the husband procured the divorce at a proceeding that was not attended by the wife. She did not make any request for alimony or child support, although their daughter was only eight years old. Upon filing for the divorce, the husband continued to reside with the wife and her family and after it was granted, the husband continued to do so.
The husband, as a "divorced" man, was assigned a "dorm room" by his employer six months to one year later. The wife testified, and the court finds credible, that this was a necessary first step to getting the apartment because the square meterage of one's residence had to be less than a certain number in order to qualify for a larger living space. Although the husband was assigned a dorm room, he continued to live in the apartment with his wife, their child, and her extended family although he spent occasional time at the "dorm room". He continued to financially support the family. He continued to have a sexual relationship with his wife. Subsequent to the divorce, the family often joked about the subject. At some point, the husband lost his dorm room because he was rarely there and because it was discovered that he had the address of the family's apartment.
The wife became pregnant by the husband in1986 and suffered a miscarriage. In 1989, the family immigrated to the United States by way of Austria and Italy. The husband applied for his marriage certificate from Ukrainian officials which was a necessary document to support his application for immigration. This document was stamped by the Ukrainian officials on August 22, 1989 and certified that the husband and wife were married. The husband and the wife told people in Austria that they were married. The husband represented to officials at the American Consulate in Italy that lie and the wife were married. All of the husband's paperwork for immigration reflected his representations that he and the wife were married. The family began their life together in the United States in an apartment in West Hartford. Connecticut. To do this, they were provided with financial assistance by Jewish Family Services whose documentation reflected that the couple was married.
The wife again became pregnant by the husband in 1990, again suffered a miscarriage and the husband drove her to the hospital. The couple continued to live together, became United States Citizens after, again, representing themselves as "married," and filed United States income tax returns every year asserting that they were either "married filing jointly" or "married filing separately." The husband assisted his daughter in applying for financial aid for college. He asserted on an application for a Federal Student Loan that the couple was "married." The CT Page 1428 husband threw his wife a 50th birthday party and continued to have sexual relations with her until March 10, 1998 when the wife moved into a separate bedroom in the apartment. At that point, the couple ceased to do things together yet the husband continued to reside there, continued to financially support the family, and continued to wear his wedding band. In June 1999, their daughter moved out of the family home.
On October 30, 2000, the husband moved out of the family home and had a girlfriend. The husband stated to the wife at that time that they were "already divorced." One day later, the wife revealed to her grown daughter the circumstances surrounding the 1983 divorce, something the daughter had no knowledge of until that moment.
 DISCUSSION
The domestic validity of divorce judgments from foreign countries is not governed by the full faith and credit clause of the Constitution, but by the rule of comity, which permits recognition of judgments of courts of foreign countries pursuant to international duty and convenience, with due regard for the rights of American Citizens. Bruneau v. Bruneau,3 Conn. App. 453, 454 (1985). Thus, a decree of divorce granted in a foreign country by a court having jurisdiction to do so will generally be given full force and effect in this country. 24 Am.Jur.2d, Divorce and Separation Sec. 959.
The principle of "comity" is not without exception, however. A foreign divorce decree may not be recognized by comity where, among other things, the decree of divorce was obtained by a procedure which would deny due process of law, was obtained by fraud, or where the divorce offends the public policy of the state of Connecticut. Litvaitis v.Litvaitis, 162 Conn. 540, 545 (1972); 24 Am.Jur.2d, Divorce and Separation, Sec. 964.
In the instant case, the wife has clearly met her burden, by clear and convincing evidence, of proving that the Ukrainian divorce was procured by fraud. The court finds the testimony of Mrs. Gitelman, Mrs. Factorovich (her sister) and Ms. Gitelman (her daughter) to be credible. The court does not find the testimony of Mr. Gitelman, Mr. Adamskiy (his friend), or Mr. Bezedzhsky (another friend) to be credible. Mr. Filshtein's testimony was not persuasive. The evidence was overwhelming and credible that the husband's action to procure a divorce in 1983 was predicated on a scheme to improve the living situation for himself and his family.
Further, the actions taken and assertions made by the husband and the reliance on those actions and assertions by the wife reflected an CT Page 1429 understanding by each of them that they were a married couple. Each and every piece of required documentation filed by the husband in his quest to immigrate to the United States supported the wife's claim that they were married. Each and every document required to be filed in the United States by the husband in order for him to work and live supported that claim as well. Indeed, the husband and wife's own conduct over a period of seventeen years established, with little doubt, that they considered themselves to be married to each other. Incredibly, the husband now claims that the divorce in 1983 was valid while, at the same time, benefitting over the last seventeen years by using his marital status to immigrate, to become sponsored in the United States, to procure housing, to receive financial assistance and to claim married status on his federal and state income tax returns.
There was not a scintilla of credible evidence provided to the court to support the husband's claim that the divorce procured in Kiev, Ukraine in 1983 was a valid divorce. Consequently, the husband's Motion to Dismiss is denied.
Prestley, J.