BIRUTE ZITKENE *v.* ROMUALDAS ZITKUS
(AC 33913)

Gruendel, Robinson and Schaller, Js.

Argued October 12, 2012—officially released February 19, 2013

*Igor G. Kuperman,* for the appellant (plaintiff).

*Romualdas Zitkus,* pro se, the appellee (defendant).

*Opinion*

GRUENDEL, J. Distilled to its essence, this case involves the question of whether the courts of this state should recognize a judgment of dissolution rendered in the Republic of Lithuania in 2009. The plaintiff, Birute Zitkene, appeals from the judgment of the trial court granting the motion of the defendant, Romualdas Zitkus, to dismiss her dissolution action. The plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction. We affirm the judgment of the trial court.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Kawecki* v. *Saas,* 132 Conn. App. 644, 648, 33 A.3d 778 (2011). "When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint,

including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings." (Citations omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009).

The record before us reveals the following facts and procedural history. The parties married in Lithuania on August 4, 1963. At that time, they were citizens and residents of Lithuania. The parties relocated to the United States approximately thirty years later. They subsequently separated and the plaintiff moved back to Lithuania. In 2004, the defendant learned that the plaintiff had commenced dissolution proceedings against him in a Lithuanian court. In response, the defendant retained an agent authorized under Lithuanian law to appear before that court on his behalf.[1]

---

[1] The defendant also retained an attorney in New York, where he then resided, who advised the defendant to seek an ex parte divorce in New York. In his affidavit, the defendant avers that he obtained an ex parte divorce decree from the Supreme Court of New York in 2006, that the court at that time advised the defendant that it could not distribute any marital property and that a separate proceeding in Lithuania was necessary to do so. The record does not indicate that the defendant filed that foreign matrimonial judgment in Connecticut pursuant to General Statutes § 46b-71.

The parties, through their respective attorneys in Lithuania, engaged in extensive negotiations regarding the distribution of the marital property, which culminated in a settlement agreement entered into by the parties on June 2, 2009. The parties and their attorneys appeared before the Kaunas City District Court in Lithuania on June 11, 2009, requesting approval of the settlement agreement. At that time, the court asked the parties a series of questions to ensure that they understood the nature of the agreement and that they were entering into it willingly and without fraud or undue influence. After the parties informed the court that they freely and knowingly entered into the agreement, the court approved the agreement and rendered judgment dissolving their marriage.[2]

Under the terms of the agreement, the plaintiff received the "greater share" of the marital property, including a residence in Kaunas, Lithuania, and a hotel in Palanga, Lithuania. The agreement further obligated the plaintiff to pay the defendant, through a series of installments, a total of 135,000 in Lithuanian currency in exchange for that greater share.

After making the first two installment payments, the plaintiff ceased making the payments required under the agreement. She thereafter filed an appeal from the judgment of the Kaunas City District Court, which was heard by a three judge panel of the Kaunas Area Court, which, for convenience, we shall refer to as the Lithuanian appellate court. In that appeal, the plaintiff did not allege any fraud, duress or misrepresentation on the part of the defendant. Rather, she alleged that "due to her difficult material situation" and the defendant's superior financial position at that time, her obligation

[2] A copy of the Lithuanian divorce certificate was appended as exhibit A to the defendant's June 9, 2011 reply to the plaintiff's objection to the motion dismiss.

to make the required installment payments should either be excused or deferred.

In its written decision dated March 15, 2010,[3] the Lithuanian appellate court found no merit in the plaintiff's appeal. It stated in relevant part: "The panel does not agree with the plaintiff's argumentation since in dissolving the marriage with the defendant and in concluding the agreement concerning the legal consequences of the divorce, it must have been clear to the plaintiff that pursuant to this agreement she was undertaking to pay the defendant LTL 135,000 for the part of the defendant's real estate awarded to her. At that time the plaintiff must have realistically evaluated her ability to discharge the obligations assumed pursuant to the agreement. The plaintiff . . . indicates that the essential reason why she cannot perform the agreement is that her financial situation has deteriorated . . . . [T]he evidence assembled in the case and the circumstances shown in the June 11, 2009 decision of the Kaunas City District Court confirm that after the dissolution of the marriage the plaintiff was awarded not only the flat at V. Putvinskio g. 38-23, Kaunas, but also other real estate, i.e., a 247 sq. m. building at Ausros Takas 11, Palanga. With regard to this, the panel states that the plaintiff, in disposing of property with great value, has a real possibility of settling with the defendant. The panel also dismisses as unfounded the plaintiff's arguments that the defendant has various properties in the [United States] which did not go to both spouses after the dissolution of the marriage but only to the defendant and that this could be a reason why the plaintiff can petition the court to distribute the

---

[3] The defendant appended a copy of the decision of the Lithuanian appellate court to his reply to the plaintiff's objection to the motion to dismiss. In addition, a copy of that decision, accompanied by a certification of translation signed before a notary public on June 24, 2011, by Marius Janusaitis, was introduced without objection as an exhibit before the trial court on July 5, 2011.

execution of the decision. It should be noted that the agreement between the parties was concluded by common agreement and there are no data in the case that the plaintiff concluded the agreement against her will; therefore the panel dismisses the arguments given by the plaintiff. . . . In the opinion of the panel, the plaintiff has not submitted to the court any evidence refuting the defendant's arguments that the plaintiff is engaged in a business and that the pension she receives is not the plaintiff's only source of income. The evidence in this case confirms that the plaintiff has real estate, which she can dispose of in seeking to settle with the defendant on time and therefore it should be deemed that the plaintiff has not shown any unfavourable circumstances preventing her from fulfilling the 11 June 2009 decision of the Kaunas City District Court." Accordingly, the Lithuanian appellate court dismissed the plaintiff's appeal.

Months later, the plaintiff commenced the present dissolution action in the Connecticut Superior Court. That one and one-half page pleading alleged in relevant part that the parties "entered into [an] agreement on [June 2, 2009] dissolving their marriage and the agreement has been accepted by the Lithuanian [c]ourt," and "[t]hat the aforesaid agreement is in contravention of Connecticut public policy and is invalid as obtained by gross misrepresentations of facts by the [d]efendant; duress by the [d]efendant; and mistakes in interpreting [United States] law committed by the Lithuanian [c]ourt." The complaint requested a dissolution of the parties' marriage,[4] and the prayer for relief

---

[4] The complaint also requested, in the alternative, a "declaratory judgment that dissolution of the aforesaid marriage issued by the Lithuanian [c]ourt is valid . . . ." On appeal, the plaintiff raises no claim regarding that request. Moreover, counsel for the plaintiff conceded at oral argument before this court that the request for declaratory relief was improper, as the trial court lacked authority to render the Lithuanian judgment invalid. Accordingly, we deem abandoned that claim for declaratory relief.

sought an equitable division of the parties' real property, personal property and debts, temporary and permanent alimony and such other equitable relief as the court deemed fair and equitable.

On April 4, 2011, the defendant filed a motion to dismiss in which he alleged, inter alia, that the parties had "entered into an agreement in Lithuania, which was adopted as a judgment of the Lithuanian [c]ourt." The motion further maintained that "to the extent the plaintiff wishes to challenge the validity of the [a]greement, she should do so before the Lithuanian court, which issued a judgment adopting same and has jurisdiction over subsequent proceedings to enforce it." The plaintiff filed an objection to that motion on May 5, 2011; the defendant filed his reply to the plaintiff's objection on June 9, 2011. In support thereof, the defendant appended to that pleading a copy of the March 15, 2010 decision of the Lithuanian appellate court and an affidavit. In his affidavit, the defendant, quoting from the decision of the Lithuanian appellate court, averred that the parties reached a " 'peaceful settlement agreement' " in 2009. He further attested that "[o]n June 11, 2009, [the plaintiff] and I, along with our respective attorneys, appeared before the Lithuanian [c]ourt, and sought the court's approval of our agreement. . . . Before the agreement was approved by the [c]ourt, the judge asked us a series of questions to make sure that we understood the nature of the agreement, and that we were entering into the agreement willingly and without fraud or undue influence. . . . Both of us informed the [c]ourt that we fully understood the terms of that agreement, and were entering into it of our own free will. . . . The agreement was reviewed and approved by the Lithuanian [c]ourt, and title to the property subject to the approved agreement was transferred to [the plaintiff]." The defendant also represented that, after failing to make the payments required under the terms

of the dissolution judgment, the plaintiff "filed an appeal of the original decision approving the agreement stating that she could not comply with the agreement because her financial situation had worsened. . . . The [Lithuanian appellate court] reviewed her petition, and ruled in my favor."

One week later, the plaintiff on June 17, 2011, filed an affidavit in support of her objection to the motion to dismiss. That affidavit made no mention of the judgment of dissolution rendered on June 11, 2009, by the Kaunas City District Court or the March 15, 2010 decision of the Lithuanian appellate court dismissing her appeal thereof. It further did not address the defendant's sworn attestation that, before adopting the parties' settlement agreement, the Lithuanian judge asked the parties a series of questions to ensure that the agreement was freely and knowingly entered into without fraud or undue influence, and that the parties so indicated at that time. Rather, the plaintiff's affidavit states that she presently resides in Kaunas, Lithuania, that she had "not been served with any form process [or notice] in connection with any divorce proceedings in the New York [courts]" and that she did not learn of the ex parte proceeding in New York until April, 2011.[5]

The court heard argument on the motion to dismiss on July 5, 2011, at which time a copy of the decision of the Lithuanian appellate court was admitted as an exhibit without objection. In its subsequent memorandum of decision, the court granted comity to the judgment of dissolution rendered by the Lithuanian court in 2009.[6] It thus concluded that "[s]ince there is no valid

---

[5] At no point in the proceedings in the trial court did the plaintiff seek to amend her complaint.

[6] In granting comity to the judgment of dissolution rendered by the Lithuanian court, the trial court observed: "Notwithstanding the fact that this court will give full force and effect to the Lithuanian divorce decree, the plaintiff still has two options: (1) appear in Lithuanian court and file a motion to open and vacate the divorce decree in accordance with Lithuanian law; or

marriage between the plaintiff and the defendant, this court lacks subject matter jurisdiction over the plaintiff's dissolution of marriage action." The court granted the defendant's motion to dismiss and this appeal followed.

We begin our analysis with a review of the doctrine of comity applied by the trial court. "[C]omity is a flexible doctrine, the application of which rests in the discretion of the state where enforcement of a foreign order is sought." *Walzer* v. *Walzer*, 173 Conn. 62, 70, 376 A.2d 414 (1977). The doctrine traces its roots to the decision of the United States Supreme Court in *Hilton* v. *Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895), which observed that " '[c]omity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Id., 163–64. "[W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial

---

(2) move to open and vacate the Lithuanian decree in this court pursuant to the rules of practice and statutes."

or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact." Id., 202–203.

Our Supreme Court likewise has explained that "judgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another. Such recognition is granted to foreign judgments with due regard to international duty and convenience, on the one hand, and to rights of citizens of the United States and others under the protection of its laws, on the other hand. This principle is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity . . . . The principle of comity, however, has several important exceptions and qualifications. A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the divorce offends the public policy of the state in which recognition is sought, or where the foreign court lacked jurisdiction." *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 544–45, 295 A.2d 519 (1972).

With respect to establishing the jurisdiction of the foreign court, "courts of this country will not generally recognize a judgment of divorce granted by a court of another country unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good faith domiciliary in the foreign nation at the time the decree was rendered." (Internal quotation marks omitted.) *Bruneau* v. *Bruneau*, 3 Conn. App. 453, 455, 489 A.2d 1049 (1985). It is undisputed that the plaintiff was domiciled in Lithuania at the time that the Kaunas City District Court rendered judgment dissolving their marriage, that both parties appeared before that court and that both parties agreed

to the settlement agreement submitted thereto. On that basis, the trial court determined that the Kaunas City District Court "had jurisdiction to enter the divorce decree." The plaintiff does not argue otherwise in this appeal.

Rather, the plaintiff argues that the court abused its discretion in applying principles of comity in light of the one sentence allegation in her complaint that the defendant perpetuated a fraud in that proceeding and that the separation agreement entered into by the parties contravenes Connecticut public policy. As our Supreme Court has explained, when a litigant seeks to enforce a foreign judgment, the burden falls to the assailant to "prove, by a preponderance of the evidence, facts that demonstrate that the foreign court lacked jurisdiction." *Maltas* v. *Maltas*, 298 Conn. 354, 364 n.11, 2 A.3d 902 (2010); accord *Donnelly* v. *Federal Aviation Administration*, 411 F.3d 267, 270–71 (D.C. Cir. 2005) (holding that "principles of comity suggest that [a foreign] judgment should be given weight as prima facie evidence of the facts underlying it" and that burden is on party challenging use of foreign judgment to impeach its reliability); *John* v. *Baker*, 30 P.3d 68, 72 (Alaska 2001) (party challenging validity of foreign judgment has burden of proof); *Leon* v. *Numkena*, 142 Ariz. 307, 309, 689 P.2d 566 (App. 1984) ("the burden of proof is upon the party attacking the validity of a foreign judgment"); *Malik* v. *Malik*, 99 Md. App. 521, 536, 638 A.2d 1184 (1994) ("Pakistani court's custody order is presumed to be correct, and this presumption shifts to [party challenging comity] the burden of proving by a preponderance of evidence that [comity is not warranted]"); *In re Marriage of Red Fox*, 23 Or. App. 393, 400, 542 P.2d 918 (1975) ("the burden of proof falls upon one attacking the validity of a foreign judgment"). With particular respect to allegations of fraud, it is well established that "[c]lear and convincing evidence of

fraud is required in order successfully to attack a foreign judgment . . . ." *Clarkson Co., Ltd.* v. *Shaheen*, 544 F.2d 624, 631 (2d Cir. 1976); see also *Chevron Corp.* v. *Donziger*, United States District Court, Docket No. 11 Civ. 0691 (LAK) (S.D.N.Y. July 31, 2012) ("this [c]ourt holds, consistent with virtually every other court to express a view on the issue, that a party resisting enforcement of a foreign judgment on the ground of fraud in its procurement bears the burden of proving the alleged fraud"). The plaintiff has not met that burden.

In moving to dismiss the present action, the defendant appended to his pleadings a sworn affidavit and a copy of the March 15, 2010 decision of the Lithuanian appellate court. Those materials provided the court with supplementary undisputed facts that (1) the plaintiff commenced a dissolution proceeding in Lithuania in approximately 2004; (2) following extensive negotiations, the parties reached a settlement agreement in 2009; (3) the parties and their attorneys appeared before the Kaunas City District Court on June 11, 2009, seeking approval of the settlement agreement; (4) the court, prior to approving the agreement, "asked [the parties] a series of questions to make sure that [they] understood the nature of the agreement, and that [they] were entering into the agreement willingly and without fraud or undue influence"; (5) both the plaintiff and the defendant "informed the court that [they] fully understood the terms of that agreement, and were entering into it of [their] own free will"; (6) the agreement "was reviewed and approved by the Lithuanian [c]ourt, and title to the property subject to the approved agreement was transferred to [the plaintiff]"; (7) the plaintiff received the "greater share" of the marital property, including a residence in Kaunas, Lithuania, and a hotel in Palanga, Lithuania; (8) the plaintiff thereafter filed an appeal of the judgment of dissolution seeking to excuse or defer her obligation under the agreement to

make certain payments to the defendant; (9) the plaintiff raised no allegation of fraud, duress or misrepresentation on the part of the defendant in that appeal, but simply alleged that she was financially unable to meet her obligation to make the required payments; (10) the Lithuanian appellate court found no merit in the plaintiff's appeal; and (11) the Lithuanian appellate court specifically found that "the agreement between the parties was concluded by common agreement and there are no data in the case that the plaintiff concluded the agreement against her will . . . ."

That evidence provides an ample basis for the trial court to grant comity to the judgment of dissolution rendered by the Lithuanian court in 2009. The plaintiff failed to undermine that conclusion with counteraffidavits disputing the aforementioned facts set forth in the defendant's affidavit and the decision of the Lithuanian appellate court. See Practice Book § 10-31 (b) ("[a]ny adverse party who objects to [the] motion [to dismiss] shall . . . file and serve . . . where appropriate, supporting affidavits"). Accordingly, as this is a case where the plaintiff's complaint "is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]."[7] (Citations omitted; internal quotation

[7] We emphasize that, in objecting to the motion to dismiss, the plaintiff failed to proffer counteraffidavits or evidence disputing the facts set forth in the defendant's affidavit and the decision of the Lithuanian appellate court regarding the validity of the Lithuanian judgment of dissolution. Although she did file an affidavit approximately one week after the filing of the defendant's affidavit, her affidavit does not reference—never mind discuss in any detail—either the proceeding before by the Kaunas City District Court that culminated with the entry of a judgment of dissolution on June 11, 2009, or the March 15, 2010 decision of the Lithuanian appellate court dismissing her appeal therefrom. To the contrary, the plaintiff's affidavit concerns only the

marks omitted.) *Conboy* v. *State*, supra, 292 Conn. 651–52. Because the court, in its discretion, properly could grant comity to the judgment of dissolution rendered by the Lithuanian court in light of the undisputed facts set forth in the defendant's affidavit and the decision of the Lithuanian appellate court, it was free to dismiss the plaintiff's action "without further proceedings"; id., 652; as that determination conclusively established that jurisdiction was lacking in the present case.

Moreover, we are mindful that "a party may be precluded from attacking a foreign divorce decree if such an attack would be inequitable under the circumstances. . . . [O]ut-of-state divorces . . . should not lightly be overturned where the parties had intended to channel the dissolution of their marriage in a legitimate rather than in an illegitimate fashion. . . . [I]f the person attacking the divorce is, in doing so, taking a position inconsistent with [her] past conduct, or if the parties to the action have relied upon the divorce, and if, in addition, holding the divorce invalid will unset relationships or expectations formed in reliance upon

ex parte divorce proceeding before the Supreme Court of New York. See footnote 1 of this opinion. The plaintiff's complaint, which alleges that the Lithuanian divorce decree was procured by fraud and duress on the part of the defendant, was filed in the Superior Court on December 8, 2010. Because the plaintiff in her affidavit filed June 17, 2011, avers that "[p]rior to April, 2011, I was not aware of the existence of any divorce proceedings in the State of New York," the New York divorce proceeding necessarily is immaterial to that December 8, 2010 allegation.

Furthermore, it should not be forgotten that this is a dissolution of marriage action. Even if we assume arguendo that the New York divorce decree is indeed a valid judgment of dissolution that somehow calls into question the efficacy of the Lithuanian divorce decree, the trial court in the present case nevertheless would be without jurisdiction to entertain the plaintiff's dissolution action. See, e.g., *Smith* v. *Smith*, 174 Conn. 434, 436, 389 A.2d 756 (1978) ("[a] valid final judgment or decree of divorce entered by the New York court having jurisdiction to do so is entitled to full faith and credit"). We thus reject the plaintiff's ancillary contention that the court improperly declined to hold an evidentiary hearing on the validity of the New York divorce proceedings.

the divorce, then estoppel will preclude calling the divorce in question. . . . Thus, if one party has accepted benefits under the original decree . . . an invalid decree will be held immune from attack . . . ." (Citations omitted; internal quotation marks omitted.) *Bruneau* v. *Bruneau*, supra, 3 Conn. App. 457–58.

It is undisputed that the plaintiff received the "greater share" of the marital property under the judgment of dissolution rendered by the Lithuanian court, which included the residence in Kaunas, Lithuania, and the hotel in Palanga, Lithuania. In the years since, she has retained the benefits of that portion of the award, while disregarding for a time her concomitant burden to make the installment payments to the defendant. In addition, by now alleging in Connecticut's courts fraud on the part of the defendant in the procurement of the Lithuanian judgment of dissolution, the plaintiff is taking a position inconsistent with her past conduct in challenging that judgment before the Lithuanian appellate court. Those considerations provide a further basis on which the court properly could recognize the Lithuanian judgment of dissolution. See *Bruneau* v. *Bruneau*, supra, 3 Conn. App. 457–58.

We therefore conclude that the court did not abuse its discretion in granting comity to the judgment of dissolution rendered by the Kaunas City District Court on June 11, 2009. As a result, the court properly dismissed the present action for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion the other judges concurred.