******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIA G. *v.* COMMISSIONER OF
CHILDREN AND FAMILIES*
(AC 40692)

Alvord, Bright and Bear, Js.

*Syllabus*

The petitioner filed a petition for a writ of habeas corpus seeking custody
of a minor child, S, from the respondent Commissioner of Children and
Families. In 2009, the petitioner illegally brought S into the United States
using both a fraudulent passport and birth certificate, which falsely
listed the petitioner and her then husband as S's birth parents. Subse-
quently, the respondent obtained temporary custody and eventually
placed S in a foster home, and the petitioner filed her habeas petition
seeking to regain custody of S. In response to a motion to dismiss for
lack of standing filed by the respondent, the trial court ordered the
petitioner to offer proof, at a preliminary evidentiary hearing on her
standing, that she was S's legal guardian. Prior to the hearing, S's biologi-
cal mother, M, filed a declaratory action with a Guatemalan court asking
the court to grant custody of S to the petitioner, and the Guatemalan
court, relying on the false birth certificate and a sworn affidavit from
M in which she averred she had conferred to the petitioner legal authority
over S, granted the petitioner parental rights, custody and representation
of S. After the petitioner submitted, inter alia, a copy of the Guatemalan
court's judgment file as a full exhibit at the evidentiary hearing, the trial
court found that she had established prima facie evidence of her standing
to withstand the motion to dismiss. Thereafter, the respondent filed a
motion for summary judgment, claiming that the Guatemalan court's
decree was not entitled to recognition because it was based on a false
birth certificate and notice of the proceedings had not been provided.
The trial court granted the respondent's motion for summary judgment
and rendered judgment dismissing the habeas petition, from which the
petitioner appealed to this court. *Held*:

1. The petitioner could not prevail on her claim that the same evidence
   used by the trial court to rule on the motion to dismiss, namely, the
   Guatemalan court's decree, also established, at the very least, a genuine
   issue of material fact that precluded the court from granting the respon-
   dent's motion for summary judgment; the trial court properly concluded
   that the Guatemalan court's judgment, in which it relied on the fraudu-
   lently obtained birth certificate and M's sworn affidavit, was not required
   to be enforced as a matter of comity, which is the recognition that one
   nation allows within its territory to the legislative, executive or judicial
   acts of another nation, as the petitioner's claim was premised on the false
   birth certificate admittedly instigated and procured by the petitioner
   and her former husband with the cooperation of M, who knew the
   untruthfulness of its content, and, thus, the enforcement of the Guatema-
   lan court's decree, based at least in part on the false birth certificate,
   was contrary to this state's public policy of the prevention of fraud as
   a matter of law, which prohibited recognition of the Guatemalan decree.

2. The trial court correctly determined that any notice of the Guatemalan
   proceedings that was provided to the respondent was insufficient as a
   matter of law; given that the Guatemalan declaratory action was not
   filed until June 17, 2015, and that a hearing was held the following
   day, the respondent could not have been provided with notice of the
   proceedings prior to June 17 because the action had not yet been filed,
   the petitioner did not dispute that notice to the respondent, as described
   by statute (§ 46b-115g [a]), was not provided in the period between the
   filing of the proceeding and when the hearing took place one day later,
   and if the petitioner knew at a hearing on June 3, 2015, that a petition
   for custody and legal guardianship was going to be filed in the Guatema-
   lan court, that filing was not disclosed to the court and the parties and
   no documents relating to the planned filing were provided.

Argued November 14, 2018—officially released January 29, 2019

*Procedural History*

Petition for a writ of habeas corpus seeking custody of a minor child from the respondent Commissioner of Children and Families, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the matter was transferred to the judicial district of Stamford-Norwalk; thereafter, the court, *Hon. Barbara M. Quinn*, judge trial referee, granted the respondent's motion for summary judgment, denied the petitioner's motion for summary judgment, and rendered judgment dismissing the habeas petition; subsequently, the court denied the petitioner's motion to reargue and reconsider, and the petitioner appealed to this court; thereafter, the court, *Hon. Barbara M. Quinn*, judge trial referee, denied the petitioner's motions to open judgment and for articulation; subsequently, this court granted the petitioner's motion for review, but denied the relief requested therein. *Affirmed.*

*Dana M. Hrelic*, with whom were *Brendon P. Levesque* and, on the brief, *Karen L. Dowd*, *Scott T. Garosshen* and *Glenn Formica*, for the appellant (petitioner).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (respondent).

*Joshua Michtom*, assistant public defender, for the minor child.

*Opinion*

BEAR, J. The petitioner, Maria G., appeals from the trial court's rendering of summary judgment in favor of the respondent, the Commissioner of Children and Families, on the petitioner's writ of habeas corpus seeking custody of the minor child, Santiago.[1] On appeal, the petitioner claims that the court erroneously failed to credit a Guatemalan court's decree, which purportedly granted her parental guardianship rights over, and custody of, Santiago, when the court concluded that (1) public policy prohibited recognition of the decree because it was premised on a false birth certificate, and (2) the decree was obtained without notice to the respondent.[2] We affirm the judgment of the court.

The following factual and procedural history is relevant to our disposition of this appeal.[3] The petitioner is a citizen of Argentina and a legal resident of the United States who resides in Stamford, Connecticut. Shortly after Santiago's birth in 2009, the petitioner, utilizing both a birth certificate that falsely listed her, and her husband at that time, as Santiago's parents and a fraudulent United States passport, illegally brought him into the United States.[4] Santiago remained in the petitioner's care until October, 2012, when the Superior Court, *Heller, J.*, granted the respondent's motion for an order of temporary custody. *In re Santiago G.*, 318 Conn. 449, 456–57, 121 A.3d 708 (2015). After initially removing Santiago to a temporary foster home in November, 2012, the Department of Children and Families (department) placed him in another foster home in December, 2012, where he remains today. Id., 457.

On November 8, 2013, the petitioner filed a petition for a writ of habeas corpus seeking to regain custody of Santiago. The petitioner alleged that the department's refusal to release Santiago to her custody violated her and Santiago's federal and state constitutional rights to due process and was contrary to Santiago's best interest. On July 3, 2014, the respondent filed a motion to dismiss the petition claiming that the petitioner lacked standing because she was neither the biological parent nor a properly declared adoptive parent of Santiago, and she had not otherwise claimed to be Santiago's legal guardian. The petitioner filed an objection to the motion to dismiss, claiming that on September 19, 2013, a Guatemalan court had recognized the validity of the admittedly false birth certificate and, therefore, recognized her as Santiago's parent. On October 23, 2014, the court issued a memorandum of decision in which it found that "the mere assertion by the petitioner that she is the legal guardian of the child under [Guatemalan] law, without more, is insufficient to confer standing." As a result of this finding, the court ordered the petitioner to offer proof, at a preliminary evidentiary hearing on her standing, that she was Santiago's legal guardian.

On June 17, 2015, prior to the evidentiary hearing, Santiago's biological mother filed a declaratory action with a Guatemalan court asking the court to grant custody of Santiago to the petitioner. One day later, on June 18, 2015, the Guatemalan court issued a declaratory judgment granting the petitioner "parental rights, custody, and representation [of Santiago] . . . ." The Guatemalan court relied on the false birth certificate as well as an affidavit from Santiago's biological mother in granting custody of Santiago to the petitioner.

On November 17, 2015, the court held the evidentiary hearing. During the hearing, the petitioner submitted a copy of the judgment file from the Guatemalan court proceedings as a full exhibit and presented testimony of the Guatemalan attorney who had represented Santiago's biological mother regarding the Guatemalan court's decree. The court subsequently allowed both parties to file posthearing briefs. The respondent argued in her brief that the Guatemalan decree did not deserve recognition by Connecticut courts because (1) the process underlying that decree contained procedural irregularities fatal to recognition, and (2) the substance of the decree was based on an admittedly false birth certificate.

The court, *Colin, J.*, rendered its decision on February 16, 2016, and found that the petitioner had established prima facie evidence of her standing,[5] but noted that "[t]he determination that a prima facie case has been established in denying a motion to dismiss does not necessarily mean that the court, at the time of the final hearing on the merits, is required to take as true the evidence offered by the petitioner at the standing hearing." On March 7, 2016, the respondent filed a motion to reargue. The court thereafter granted the respondent's motion in part, denied it in part, and reaffirmed its decision on the issue of standing.

The parties subsequently filed separate motions for summary judgment. The petitioner argued in her motion that the court's previous recognition of prima facie evidence of standing established that there was no genuine issue of material fact as to the petitioner's legal right to custody of Santiago. The respondent argued in her motion that the Guatemalan court decree was not entitled to recognition because it was based on a false birth certificate, and notice of the Guatemalan proceedings had not been provided to the respondent.

On January 12, 2017, the court granted the respondent's motion for summary judgment, denied the petitioner's motion for summary judgment, and dismissed the habeas petition.[6] In rendering its decision, the court applied the Uniform Child Custody Jurisdiction and Enforcement Act, General Statutes § 46b-115 et seq. (act), and determined that the Guatemalan court decree was not entitled to recognition because it was based

on the petitioner's fraudulent and illegal conduct that was repugnant to the public policy of this state, it relied on the false birth certificate, and it was secured without adequate notice to the respondent. The court, therefore, concluded that the petitioner could not demonstrate that she is the biological parent or legal guardian of Santiago and dismissed the habeas petition. On February 1, 2017, the petitioner filed a motion to reargue, and the court reaffirmed its decision on June 20, 2017. See footnote 1 of this opinion. This appeal followed.[7]

We first set forth the applicable standard of review. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the non-moving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Citation omitted; internal quotation marks omitted.) *Rickel* v. *Komaromi*, 144 Conn. App. 775, 779–80, 73 A.3d 851 (2013).

I

The petitioner claims that the same evidence used by the court to rule in her favor on the motion to dismiss also established, at the very least, a genuine issue of material fact that precluded the court from granting the respondent's motion for summary judgment. Specifically, the petitioner argues that, despite the admittedly false birth certificate, the Guatemalan court's decree created a genuine issue of material fact that she was the legal guardian or custodian of Santiago. The respondent claims that the court properly determined that there was no genuine issue of material fact that the Guatemalan decree was not entitled to recognition, arguing that the petitioner's participation in the fraud regarding the birth certificate made enforcement of the decree repugnant to the public policy of this state.

We first note that the false birth certificate cannot be the basis for the petitioner's claim for custody because it

clearly was fraudulent, and the petitioner has conceded that the birth certificate falsely listed her and her former husband as Santiago's biological parents. Moreover, our Supreme Court determined that the birth certificate has no legal effect in the United States. See *In re Santiago G.*, supra, 318 Conn. 471–72 ("[A]lthough [the petitioner] was in possession of a birth certificate naming her as Santiago's mother, she ultimately conceded that that birth certificate was fraudulent. As we previously have explained, [a] birth certificate is a vital record that must accurately reflect legal relationships between parents and children—it does not create those relationships. . . . In sum, it was absolutely correct that Santiago had no legal guardian in the United States, and neither the parties nor the court was mistaken in this regard." [Citation omitted; internal quotation marks omitted.]).

The crux of the petitioner's claim, therefore, is that, despite the previous ruling of our Supreme Court acknowledging the fraudulent nature of the birth certificate, the Guatemalan court's decree was entitled to recognition under the rules of comity, and summary judgment in favor of the respondent should not have been rendered because there was a genuine issue of material fact as to whether the decree was obtained by fraud.

"[C]omity is a flexible doctrine, the application of which rests in the discretion of the state where enforcement of a foreign order is sought. . . . The doctrine traces its roots to the decision of the United States Supreme Court in *Hilton* v. *Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895), which observed that [c]omity . . . is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. . . . [W]here there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, *after due citation or voluntary appearance of the defendant*, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and *there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect*, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact." (Citations omitted; emphasis added; internal quotation marks omitted.) *Zitkene* v. *Zitkus*, 140 Conn. App. 856, 865–66, 60 A.3d 322 (2013).

"[J]udgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another. Such recognition is granted to foreign judgments with due regard to international duty and convenience, on the one hand, and to rights of citizens of the United States and others under the protection of its laws, on the other hand. This principle is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity . . . . The principle of comity, however, has several important exceptions and qualifications. A decree of divorce will not be recognized by comity *where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the divorce offends the public policy of the state in which recognition is sought . . . .*" (Emphasis added.) *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 544–45, 295 A.2d 519 (1972); *Zitkene* v. *Zitkus*, supra, 140 Conn. App. 866.

In addition to the doctrine of comity, the act, as adopted in § 46b-115ii, provides that "[a] court of this state shall treat a foreign child custody determination[8] made under factual circumstances in substantial conformity with the jurisdictional standards of this chapter, *including reasonable notice and opportunity to be heard to all affected persons*, as a child custody determination of another state under sections 46b-115 to 46b-115t, inclusive, unless such determination was rendered under child custody law which violates fundamental principles of human rights *or unless such determination is repugnant to the public policy of this state.*" (Emphasis added; footnote added.) This court has recognized that the prevention of fraud is an important public policy. "The important public policy we identify is the one against fraud, which is deeply rooted in our common law . . . ." *Schmidt* v. *Yardney Electric Corp.*, 4 Conn. App. 69, 74, 492 A.2d 512 (1985); see also *Broome* v. *Beers*, 6 Conn. 198, 210–12 (1826).

The petitioner admitted to investigators from the department and the United States Department of Homeland Security that she brought Santiago into the country illegally with a false birth certificate and a fraudulent passport, and she subsequently pleaded guilty to a federal felony in connection with the fraudulent passport. *In re Santiago G.*, supra, 318 Conn. 460–61. Additionally, the petitioner does not dispute that the Guatemalan court relied on the same false birth certificate in issuing its judgment confirming the petitioner's parental guardianship rights to Santiago. The trial court also listed the following undisputed facts set forth in the petition: "The petitioner is a citizen of Argentina and a legal resident of the United States . . . . [The] Guatemalan birth certificate identifies the petitioner and her

estranged husband as the child's parents. She brought him to the United States shortly after his birth. . . . She admitted that she obtained custody of a newborn that was not legally adopted and that she illegally brought the child into the United States with a false birth certificate and a fraudulent United States passport." (Footnote omitted.)

The petitioner, however, presented additional evidence during the summary judgment proceeding that she had disclosed to the Guatemalan court that she was not Santiago's biological mother, and that the birth certificate was falsified. This included the sworn affidavit of Santiago's biological mother, as well as DNA evidence confirming that the petitioner was not Santiago's biological mother. The respondent, in the summary judgment proceeding, did not submit any contrary evidence that the petitioner made false representations to the Guatemalan court about those matters. Construing the evidence in the light most favorable to the petitioner, a factfinder could conclude that by providing such information to the Guatemalan court, she was attempting to correct her earlier fraud and have the Guatemalan court, after considering all of the evidence, confirm that the birth certificate, despite its factual flaws, was entitled to legal recognition under Guatemalan law. Because the facts relied upon by the petitioner regarding the Guatemalan court proceedings are undisputed, the remaining legal issue is whether the Guatemalan decree, like the birth certificate on which it is based, is void as against Connecticut public policy as found by the trial court.

The petitioner argues that the respondent failed to satisfy her burden of proof on summary judgment that there was no genuine issue of material fact that the Guatemalan decree was not entitled to recognition under comity. Specifically, the petitioner argues that there is a genuine issue of material fact as to whether the Guatemalan court could conclude that she still had parental rights to Santiago, "despite the initial misrepresentation that she was Santiago's biological mother."[9] We conclude, however, that this purported genuine issue of material fact is in reality a legal question about the enforcement of the Guatemalan court decree in Connecticut. On appeal, the petitioner relies on the Guatemalan court decree to satisfy the legal guardianship requirement of Connecticut law, and asks that we recognize that decree through the principle of comity.

In Connecticut, a petitioner in a habeas corpus petition for custody of a child, in order to set forth a cognizable claim, must establish that she is the child's biological parent, his adoptive parent through a proper adoption, or his legal guardian through a recognized court procedure. See *Weidenbacher* v. *Duclos*, 234 Conn. 51, 62–63, 661 A.2d 988 (1995). In *Livaitis*, another family law case, our Supreme Court stated that a foreign decree

"will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the [decree] offends the public policy of the state in which recognition is sought, or where the foreign court lacked jurisdiction." *Litvaitis* v. *Litvaitis*, supra, 162 Conn. 545.

In the present case, the trial court stated that our law does not permit those who engage in fraud to benefit from that fraud, and that the petitioner's fraudulent conduct "attack[ed] the very core of the court's inherent integrity." Thus, the court concluded that the Guatemalan decree, having been "obtained by fraud, or where [it] offends the public policy of the state in which recognition is sought"; id.; was not entitled to recognition under the general rules of comity or under the specific requirements of the act.

In *In re Santiago G.*, supra, 318 Conn. 474–75, our Supreme Court reflected upon the unusual factual circumstances of this case and the unfortunate results that occurred from the choices of the petitioner and her former husband: "As a final matter, we must reject the suggestion of the parties that the highly unusual facts of this case warranted a disregard of the typical procedures attendant to a motion to revoke commitment, in favor of some alternative approach more suited to the circumstances. The problem here is not so much that the statutory framework is inadequate, but that it was not designed to accommodate individuals who have chosen to operate outside of the strictures of the law, regardless of their reasons. It was because the [biological mother] and [the petitioner] knowingly agreed to effectuate an illegal international adoption that [the petitioner] was vulnerable to the cruel act of a vindictive individual . . . and all of the subsequent occurrences that that act set in motion. Because [the petitioner] lacked the status of a legal parent, she also lacked the constitutional and statutory rights attendant to that status. Additionally, the illegalities involved in [the petitioner] obtaining Santiago and transporting him, using a fraudulent passport, to the United States resulted in significant delay in the discernment of the truth, during which the interests of Santiago in stability and permanency began to diverge, as it turns out inexorably, from the interests of the [biological mother] and [the petitioner]. We say this not to chastise or lay blame, but rather, to explain that the law is ill equipped to save those who have chosen to disregard it." (Footnote omitted.)

At the time of its consideration of the summary judgment motions, the court had before it the petitioner's admissions and our Supreme Court's recognition that the birth certificate relied on by the Guatemalan court had knowingly been instigated and procured by the petitioner and her former husband, with the coopera-

tion of the biological mother, who had consented to them being listed as the biological parents although that was false. The court did not err in rendering summary judgment in favor of the respondent, who had met her burden of establishing the lack of any factual dispute concerning the invalidity of the Guatemalan court decree which was admittedly based, at least in part, on the false birth certificate.[10]

In the present case, the petitioner merely refers to the court's finding after the evidentiary hearing on the motion to dismiss that there was some factual dispute as to the propriety of the Guatemalan court decree. This court has found, however, that "[i]t is not enough . . . for the opposing party [to a motion for summary judgment] merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Rickel* v. *Komaromi*, supra, 144 Conn. App. 780. Moreover, "[i]t is well recognized that courts will not lend their assistance to enforce agreements whose inherent purpose is to violate the law . . . even to reach what appears to be an equitable result. . . . Generally, agreements contrary to public policy, that is, those that negate laws enacted for the common good, are illegal and therefore unenforceable." (Citations omitted; internal quotation marks omitted.) *In re Santiago G.*, supra, 318 Conn. 475 n.17.

As our Supreme Court found, "[the petitioner] and [Santiago's biological mother] knowingly agreed to engage in a subterfuge to evade the strictures of [federal] adoption laws and achieve more expeditiously their own goals, albeit admirable ones." Id. Our Supreme Court further recognized that accepting the wishes of the petitioner and the biological mother as to who Santiago's mother should be would be tantamount to enforcing the illegal agreement between them and would be, therefore, "contrary to the public policies underlying the adoption laws of both this country and of Guatemala." Id.

In light of the fact that the petitioner's claim is premised upon the false birth certificate admittedly instigated and procured by the petitioner and her former husband, with the cooperation of the biological mother, who knew the untruthfulness of its content, we agree with the trial court that enforcement of the Guatemalan court's decree, which is based, at least in part, on the false birth certificate, is contrary to this state's public policy as a matter of law. Accordingly, we conclude that the trial court, in construing the evidence in a light most favorable to the petitioner, properly concluded that the Guatemalan court's reliance on the fraudulently obtained birth certificate and Santiago's biological mother's sworn affidavit, in which she avers that she

conferred legal authority to the petitioner over Santiago, did not require its judgment to be enforced as a matter of comity.

## II

Additionally, the petitioner argues that the Guatemalan proceedings were adequately noticed or, at the very least, there was a genuine issue of material fact that adequate notice was provided. The petitioner asserts that, given the respondent's representations to the trial court at the June 3, 2015 hearing prior to the evidentiary hearing on the motion to dismiss,[11] it is apparent that the respondent had actual notice of the Guatemalan proceedings. The respondent replies that the Guatemalan judgment does not warrant recognition because there existed no genuine issue of material fact that adequate notice of the pendency of the Guatemalan proceedings was not provided.[12]

As previously discussed, § 46b-115ii treats all foreign child custody determinations as child custody determinations of another state under §§ 46b-115 to 46b-115t, inclusive, and, accordingly, affords all parties affected by a foreign child custody determination "reasonable notice and an opportunity to be heard." Section 46b-115o (a) provides that "[b]efore a child custody determination is made under this chapter, notice and an opportunity to be heard in accordance with the standard established in section 46b-115g shall be given to the parties, any parent whose parental rights have not been previously terminated and any person who has physical custody of the child."

Additionally, General Statutes § 46b-115g (a) provides that "[n]otice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be: (1) By personal delivery outside this state in the manner prescribed for service of process within this state; (2) in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction; (3) any form of mail addressed to the person to be served and requesting a receipt; or (4) as directed by the court including publication, if other means of notification are ineffective." Moreover, "[t]hese methods are not exclusive. Any method of serving notice may be employed as long as it is given in a manner reasonably calculated to give actual notice and meets due process requirements as they exist at the time of the proceeding." (Internal quotation marks omitted.) *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 306–307, 541 A.2d 873 (1988).

The petitioner argues that the colloquy between the respondent and the trial court on June 3, 2015, establishes that, at the very least, a genuine issue of material fact exists as to whether the respondent was provided

with notice of the Guatemalan proceedings. The Guatemalan declaratory action, however, was not filed until June 17, 2015, and a hearing was held the next day on June 18, 2015. The respondent could not have been provided with notice of the proceedings prior to June 17, 2015, because the action had not yet been filed. If the petitioner knew on June 3, 2015, that a petition for custody and legal guardianship was going to be filed in the Guatemalan court on June 17, 2015, that filing was not disclosed to the court and the parties at the preevidentiary hearing, and no documents relating to the planned filing were provided at such hearing. Moreover, the petitioner does not dispute that notice to the respondent, as described in § 46b-115g (a), was not provided in the period between the filing of the proceeding and when the hearing took place one day later. As such, we conclude that the respondent met her burden of establishing that there was no genuine issue of material fact that adequate notice was not provided pursuant to § 46b-115ii.

## III

In sum, the petitioner has not established that there is any genuine issue of material fact that the court erroneously failed to accept and apply a Guatemalan court's decree, purportedly granting her parental guardianship rights over, and custody of, Santiago, on the grounds set forth in her appeal, i.e., that the court erroneously concluded that (1) public policy prohibited recognition of a decree premised on a false birth certificate, and (2) the decree was obtained without proper notice to the respondent. The court properly ruled as a matter of law that such decree was against the public policy of, and not entitled to be enforced in, Connecticut. The court also correctly determined that any notice of the Guatemalan proceedings that was provided to the respondent was insufficient as a matter of law.

Because we conclude that there was no genuine issue of material fact that the Guatemalan decree was not entitled to recognition in Connecticut, and that the respondent was entitled to summary judgment as a matter of law, we conclude that the trial court properly granted the respondent's motion for summary judgment and dismissed the petitioner's habeas corpus petition.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] Both parties have at times referred to the trial court's rendering of summary judgment as premised on the petitioner's lack of standing to bring the habeas petition. The trial court, however, did not make reference to any standing issue in its memorandum of decision. In its memorandum of decision on the petitioner's motion to reargue her motion for summary judgment, the court set forth that it previously had concluded that the petitioner's prima facie claim of standing could not form a basis for the

finding, without more, that a 2015 Guatemalan decree conclusively awarded custody to her and must be recognized. In that memorandum, the court also rejected the petitioner's claim under the Hague Convention first mentioned in her motion for summary judgment.

The court's conclusion in its memorandum of decision rendering summary judgment was as follows: "If neither the birth certificate nor the 2015 decree purporting to award the petitioner parental guardianship and custody can be legally recognized, the crux of the habeas claim cannot be proven. If the gravamen of a habeas petition is that the petitioner must establish that she is the parent or the legal guardian of the child she seeks, then [Maria G.] cannot establish her claim under any set of facts she has brought forth. The respondent has demonstrated through counteraffidavits, other submissions, and the law a legally sufficient defense to this action. Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . The court finds that there remains no triable issue of fact and the petitioner's request for relief therefore fails." (Citation omitted; internal quotation marks omitted.) The court, accordingly, dismissed the petition for a writ of habeas corpus.

[2] The petitioner's table of contents in her brief before this court includes the following: "I. Where the trial court previously found that the evidence established that the 2015 Guatemalan proceedings were proper at an evidentiary hearing on that very issue, the trial court erred in then discrediting that evidence at summary judgment and holding that they were indisputably improper. A. Comity generally requires recognition of foreign court proceedings. B. As a matter of law, the 2015 Guatemalan judgment was not obtained by fraud or, at the very least, there was a genuine issue of material fact on that issue. C. As a matter of law, the 2015 Guatemalan court proceedings were adequately noticed or, at the very least, there was a genuine issue of material fact on that issue."

[3] A thorough factual and procedural background of the proceedings concerning Santiago is provided in *In re Santiago G.*, 154 Conn. App. 835, 108 A.3d 1184, aff'd, 318 Conn. 449, 121 A.3d 708 (2015), and *In re Santiago G.*, 325 Conn. 221, 157 A.3d 60 (2017). In *In re Santiago G.*, supra, 154 Conn. App. 861, this court affirmed the judgment of the trial court denying Santiago's biological mother's motion to revoke the commitment of her minor child to the respondent. Our Supreme Court affirmed that decision in *In re Santiago G.*, supra, 318 Conn. 449, 475, 121 A.3d 708 (2015). The petitioner had filed a motion to intervene in those proceedings, which the trial court denied. Id., 457 n.4. In *In re Santiago G.*, supra, 325 Conn. 223, 236, the petitioner appealed from the judgment of the trial court denying her motion to intervene as of right and permissively, and our Supreme Court dismissed that appeal for lack of subject matter jurisdiction.

In the present case, the trial court stated that "[m]any of the underlying facts in this matter are not in dispute; rather, it is the legal import of the uncontested crucial facts and documents which are at issue in both [summary judgment] motions."

[4] On April 16, 2013, the petitioner pleaded guilty to a federal felony in connection with her bringing Santiago into the country illegally with forged documents and, as part of her sentence, she was to be deported to Argentina. *In re Santiago G.*, 318 Conn. 449, 460–61, 121 A.3d 708 (2015).

[5] Specifically, the court found the following facts sufficient to establish standing: "(1) [T]he now adult biological mother of the child has formally requested through the Guatemalan court that the petitioner have custody of her child; (2) a family court in Guatemala granted that request in [June, 2015]; (3) the child was raised in Stamford, Connecticut by the habeas petitioner from the child's birth in [2009] until [the department] removed the child from the petitioner's custody in October, 2012; and (4) the juvenile court on September 9, 2013, noted that '[the petitioner] is the only mother that [Santiago] has known, and she is unquestionably his psychological mother.' "

[6] The court subsequently filed a corrected memorandum of decision on January 26, 2017, to address several minor errors, leaving the substance of its decision intact.

[7] On August 4, 2017, during the pendency of this appeal, the petitioner filed a motion for articulation, requesting that the trial court articulate whether it found that she lacked standing to bring the habeas petition, and, if so, that the court state the factual and legal basis for its holding. Additionally, on October 20, 2017, the petitioner filed a motion to open the judgment.

On March 15, 2018, the trial court denied the petitioner's motion to open

judgment. On March 16, 2018, the trial court denied the motion for articulation, concluding that "[t]he interpretation of the decision and the logical conclusions to be drawn from it are within the purview of the appellant and need not be provided by the court." The petitioner subsequently filed a motion for review of the trial court's decision, and this court granted the motion for review but denied the requested relief.

[8] General Statutes § 46b-115hh provides in relevant part that " '[f]oreign child custody determination' means any judgment, decree or other order of a court or tribunal of competent jurisdiction of a foreign state providing for legal custody, physical custody or visitation with respect to a child. . . ."

[9] The petitioner alleged in her petition that Santiago is her legal child. She, however, has not disputed that she is not Santiago's biological mother, and she has relied at various stages of this continuing litigation on the support of the biological mother.

[10] Our Supreme Court has noted the mischief that could occur because of a false birth certificate: "We also reject the claim of the plaintiff and the child's attorney that the child's birth certificate conclusively established that the plaintiff is her mother. One does not gain parental status by virtue of false information on a birth certificate. See *Remkiewicz* v. *Remkiewicz*, [180 Conn. 114, 120, 429 A.2d 833 (1980)] ('[i]f a stepfather could acquire parental rights through the simple expedient of changing his stepchild's birth certificate, all sorts of mischief could result')." *Doe* v. *Doe*, 244 Conn. 403, 446, 710 A.2d 1297 (1998).

[11] Specifically, the petitioner directs this court to the following colloquy that occurred between the respondent and the court at the June 3, 2015 hearing:

"[The Respondent]: [W]ithin the past week, and this is not a representation from [the petitioner's counsel], *there is a pending court matter in Guatemala* by which they anticipate a judge in Guatemala . . . is considering and might very well grant an order in Guatemala in effect validating or ratifying the custodial placement of the child with [the petitioner].

"*If that were true and if that were to come to pass*, I would anticipate that the department would withdraw its standing objection so at least we would get past that and the court would be able to consider the merits.

"I can't represent to the court what the department's ultimate position would be, but since we are only at the standing stage, *if* [*the petitioner's counsel*] *were to make those representations to the court and in fact he led me to believe he'd actually be asking for a . . . continuance to attempt to secure confirmation of this new order from Guatemala . . . .*" (Emphasis added.)

When the court asked the respondent what action to take while waiting for the petitioner's counsel to ask for a continuance of the evidentiary hearing, the respondent stated that it "would not also be adverse to the court on its own sua sponte issuing a continuance pending a report from [the petitioner's counsel] about the status *of this purported new Guatemalan order* . . . which might very well lead to the department withdrawing its standing objection." (Emphasis added.) The court then replied that the future "evidentiary hearing *may also involve the issue of what if any recognition this court should give to any order entered by the court in Guatemala* and how such an order if it exists is impacted by any other orders concerning custody . . . ." (Emphasis added.)

After the court decided it would leave it to either of the parties to request a continuance date, the respondent stated: "I would rather not . . . ask for a necessary date because *I think* [*the petitioner's counsel*] *would like the opportunity to work out the details from Guatemala and I don't know while he is hopeful that will happen soon . . . .*" (Emphasis added.)

[12] The respondent first raised the notice argument in her objection to the petitioner's motion for summary judgment.

---